**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**DANON BARTON, # 14195**                                             **CIVIL ACTION**

**VERSUS**                                                            **NO. 05-0584**

**LOUISIANA STATE ET AL.**                                           **SECTION "C"**

<u>**ORDER AND REASONS**</u>

Before this Court is a petition for habeas corpus relief by Mr. Danon Barton

("Petitioner"), pursuant to 28 U.S.C. § 2254.  As grounds for relief, Petitioner claims that his

Sixth Amendment rights were violated when the District Court permitted the State to introduce

evidence of Petitioner's co-defendants' confessions, which inculpated Petitioner.

Upon a thorough review of the record, the memoranda, and the applicable law, the Court

has determined that Petitioner's habeas corpus petition is without merit.  For the reasons set forth

below, this petition is DENIED.

I.        **Background and Procedural History**

Petitioner is a state prisoner at the Catahoula Correctional Center in Harrisburg,

Louisiana.[1]  The following facts are taken from the Louisiana Fifth Circuit's denial of his

direct appeal:[2]

> On March 23, 2000, a grand jury for Jefferson Parish returned an 11-count
> indictment against defendant, Danon Barton and two others, James Jenkins and Keith
> Lipton, alleging that they committed one count of conspiracy to commit armed robbery
> (LSA-R.S. 14:26 and 14:64); one count of aggravated burglary (LSA-R.S. 14:60); two
> counts of armed robbery (LSA-R.S. 14:64); one count of simple burglary (LSA-R.S.
> 14:62); two counts of attempted armed robbery (LSA-R.S. 14:27 and 14:64); three counts
> of aggravated kidnapping (LSA-R.S. 14:44); and one count of possession of stolen
> property valued at more than $ 1,000 (LSA-R.S. 14:69). At the arraignment on March 27,
> 2000, defendant pled not guilty. The state subsequently amended the indictment to
> change the aggravated kidnapping charges to three counts of armed robbery, and to add
> count 12, charging defendant and Jenkins with aggravated burglary (LSA-R.S. 14:60).
> Following a jury trial on March 15 through 17, 2001, defendant was found guilty
> as charged of conspiracy to commit armed robbery (count 1), both counts of attempted
> armed robbery (counts 6 and 7), and possession of stolen property valued at $ 500 or
> more (count 11). The jury returned responsive verdicts of simple robbery as to counts 8, 9
> and 10 (armed robbery), and a responsive verdict of burglary of an inhabited dwelling as
> to count 12 (aggravated burglary). Finally, the defendant was acquitted on counts 2, 3, 4,
> and 5.
> On August 12, 2001, the trial judge sentenced the defendant to five years at hard
> labor without benefit of parole, probation or suspension of sentence for conspiracy to
> commit armed robbery and each count of attempted armed robbery (counts 1, 6, and 7).
> The trial judge also sentenced defendant to one year at hard labor for each count of
> simple robbery (counts 8, 9, and 10), possession of stolen things (count 11), and simple
> burglary of an inhabited dwelling (count 12), with that sentence to be served without
> benefit of parole, probation or suspension of sentence. All of the sentences were ordered
> to be served consecutively with each other…
> [The following facts were presented at trial:]
> The trial testimony revealed that crimes were committed on August 9, 1999,
> August 12, 1999, and August 14, 1999.
> On August 9, 1999, at approximately 11:00 p.m., Detective McGregor of the
> Kenner Police Department responded to an armed robbery and a burglary at 3432 East
> Loyola Drive in Kenner, the home of Supatra Bass. According to Ms. Bass, three men
> entered the home and robbed the occupants at gunpoint after she and her eldest son,
> Supachart Uaroon, returned from Wal-Mart. Mr. Uaroon said that there were two black

---

[1] Fed. Rec. Doc. 1, Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody,
*Danon v. Louisiana State et al,* No. 05-0584.
[2] State Rec., Vol. 11 of 11, affirmed, *State v. Barton*, No. 02-KA-163 (Sept. 30, 2003).

men who entered the house, and both Ms. Bass and Mr. Uaroon said they saw a dark, American-made car parked near their house before the men entered the home.

The next day, Ms. Bass found a cellular telephone that did not belong to anyone in the home. Detective McGregor subsequently learned that the telephone belonged to co-defendant, Keith Lipton, with an address of 1960 Elizardi Street in New Orleans. Detective McGregor showed photographic lineups of Lipton and another man, Ryan Henderson, to the victims. Both identified Lipton, and one of them tentatively identified Henderson. However, Detective McGregor later learned Henderson could not have been involved, since he was in prison at the time.

Detective O'Neil of the Jefferson Parish Sheriff's Office investigated the incident that occurred on August 12, 1999 at a Metairie Wal-Mart. The victims, Mr. and Mrs. Kiv, testified at trial that they had been vacationing in New Orleans and were on their way home to Texas. Between 12:30 and 1:00 a.m., they stopped at Wal-Mart. When the Kivs returned to their automobile, they discovered that the drivers' side window was smashed and that her luggage and other belongings were missing.

Shortly thereafter, a dark-colored car with three men inside approached. Mrs. Kiv testified that a young man exited the car wearing a bandanna and a hat, pointed a gun at her, and demanded her purse. Mr. Kiv said that the man attempted to rob him as well. Mr. Kiv saw another man exit the car, while another person remained in the car. The couple successfully eluded the men by running inside of Wal-Mart. Mr. Kiv described the car as having a "loud" muffler, and Mrs. Kiv said the car was "noisy."

Detective O'Neil forwarded photographic lineups containing photos of the defendant, and co-defendants, Lipton and Jenkins, to a police department in Texas. Detective O'Neil learned that Mr. Kiv was unable to identify anyone and that Mrs. Kiv was apparently afraid to even look at the lineups.

Detective Cunningham of the Kenner Police Department was assigned to investigate the August 14, 1999 incident involving Eric and Lien Tran, and Mrs. Tran's sister, Rebecca Nguyen. Around midnight, after finishing their shifts as waitresses, Ms. Nguyen and Mrs. Tran went to Wal-Mart. They shopped and then returned to the Tran's residence in Kenner. As the two women and Mr. Tran brought the purchases into the house, a car drove up and parked. Two men wearing bandannas on their faces approached and ordered everyone inside at gunpoint. The men told them to lie on the floor and demanded money. One of the men demanded Ms. Nguyen's purse, but she had left it in the car. All she had in her pocket was her car key, which the man took. Ms. Nguyen saw a third man enter the house later. Although he was not wearing a mask, she was subsequently unable to identify anyone.

Mrs. Tran, who was four months pregnant at the time, said that the gunman demanded to see the "safe." She showed them the safe in the bedroom, which did not contain any cash. Ultimately, Mrs. Tran handed over a check that she intended to deposit. The men continued to demand cash, and threatened to kill her. They also took Mr. Tran's bag and his wallet.

The men ransacked the house and found a locked box under the bed. One of the Trans opened the box containing $ 50,000 in cash and a "V" shaped necklace (State's Exhibit 2) belonging to Mr. Tran's mother, which the men took. Mrs. Tran stated that a third man had entered the house and that all three men were rummaging through the box.

Ms. Nguyen and Mr. Tran said the car that pulled up at the house was a dark-colored car and Mr. Tran said the car had a loud muffler. None of the victims were able to identify anyone as the perpetrators from photographic lineups. However, Detective McGregor testified that Mr. Tran's bag was subsequently recovered, and it contained fingerprints that were determined to belong to Lipton.

Later on August 14, 1999, the defendant, Lipton, and Jenkins purchased automobiles at Affordable Used Cars. The owner of the business, John Bridges, testified that all three paid cash for the automobiles, specifically defendant paid $ 4350, Lipton paid $ 5200, and Jenkins paid $ 3500.

On August 17, 1999, a search warrant was executed at 1960 Elizardi Street, which was listed as Lipton's address by his cellular phone provider. There, the police recovered the necklace taken from the Tran's residence. Detective Cunningham testified that there was a warrant for Lipton's arrest and that they had information concerning Lipton's whereabouts. New Orleans police officers subsequently stopped the defendant in his new car with Lipton, and Lipton was arrested pursuant to the arrest warrant.

Detective Cunningham went to the New Orleans Police Department to talk to the defendant. Detective Cunningham stated that he did not consider the defendant a suspect at the time, but that he only wanted to speak to the defendant to see if Lipton had said anything to the defendant about the case. Detective Cunningham testified that the defendant told him that Lipton had called that day to ask for help leaving town because he was wanted by the police. Detective Cunningham testified that he asked the defendant if he would give a statement in Kenner, and he agreed.

Detective Cunningham did not consider the defendant to be a suspect and did not have the defendant in custody in Kenner. The defendant said that he had told the truth in New Orleans, but that he had additional information that he wanted to relate. Detective Cunningham began talking to the defendant, but stopped to advise the defendant of his constitutional rights when the defendant said that he knew the police were looking for a blue Chevy Lumina, that he had blue Chevy Lumina, and that he had loaned his car to Lipton. After the defendant waived his rights, the defendant told Detective Cunningham in a taped interview that he had loaned his car to Lipton the preceding week around Thursday (August 12, 1999) and Friday (August 13, 1999). The defendant stated that Lipton told him, before taking the car on Friday, that he was going to Kenner to "get paid," which the defendant said meant that Lipton was going to rob someone. Lipton returned the car at approximately 1:00 a.m., told the defendant he had robbed some "Chinese" people, and gave the defendant $ 2300 in cash. Thereafter, the defendant brought Lipton home. The defendant related that Lipton had given him $ 1400 in 100 dollar bills on August 17, 1999 to take him out of town and keep his "mouth shut." Finally, the defendant denied knowing anything about any other robberies. Defendant said that he told his girlfriend to take the Lumina to Mississippi because it was a "hot" car.

Approximately three hours later, the defendant made a taped statement to Detective O'Neil in which he admitted he drove to Wal-Mart with Lipton and Jenkins on August 12, 1999 and spotted a couple from Texas (the Kivs). According to the defendant, he parked the car and went inside Wal-Mart while Jenkins and Lipton stayed outside to watch for the victims. Defendant said he went inside of Wal-Mart and returned to find Jenkins and Lipton rummaging through the victims' automobile. The defendant said that

Lipton and Jenkins returned to the car empty-handed. According to the defendant, all three of them waited ten or twenty minutes for the victims to exit Wal-Mart. As the victims exited, Lipton and Jenkins covered their faces with bandanas, and the defendant drove beside the victims when they reached their automobile. Lipton, armed with a black, metal BB gun, approached the man, while Jenkins, armed with a real handgun, approached the lady. Jenkins and Lipton ran after the victims, but returned to the car when the victims eluded them. According to the defendant, Lipton and Jenkins wanted to "go on another run," but the defendant refused. Defendant said he allowed Lipton to borrow his car the following night, after which Lipton gave him $ 2300.

After Jenkins was arrested on August 27, 1999, the police interviewed his girlfriend, Laquwanda Dowell. Ms. Dowell admitted that the defendant and Lipton came to her home one night where she lived with Jenkins. According to Ms. Dowell, the three left and returned late at night with money. She acknowledged that she heard the defendant count "thirteen ninety." Ms. Dowell admitted she had told the police she saw money and jewelry, but that she made the statement under threats from Detective Cunningham that he would have Child Protection investigate her. However, Ms. Dowell testified that she did see a "V" shaped necklace on the same night they were counting money, and she identified State's Exhibit 2 as a necklace that "looks like" the necklace she saw that night.

The state called Jenkins and Lipton to testify pursuant to a grant of immunity. Although the two admitted that they had entered guilty pleas in this case, they refused to inculpate anyone else and refused to testify even when threatened with contempt.

At trial, the defendant and his girlfriend testified for the defense. The defendant claimed that he lied in the statements because the police told him that he could go home if he implicated Lipton. Although he admitted that he was with Jenkins and Lipton at Wal-Mart, he denied having anything to do with the offenses. Both the defendant and his girlfriend, Aquilla Green, testified that they were planning to go to Mississippi to visit Ms. Green's relatives. She denied that she drove the car to Mississippi to hide it from the police. Ms. Green said that she returned in the car once the defendant's mother called her in Mississippi.

The foregoing direct appeal was denied on September 30, 2003 by the Fifth Circuit.[3]

Petitioner subsequently applied for a supervisory writ to the Louisiana Supreme Court, which

was denied February 20, 2004.[4]

Petitioner filed this federal application for habeas corpus on February 18, 2005.[5]

---

[3] State Rec., Vol. 11 of 11, affirmed, *State v. Barton*, No. 02-KA-163 (Sept. 30, 2003).
[4] Fed. Rec. Doc. 1, Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody, *Danon v. Louisiana State et al,* No. 05-0584, Ex. 2.
[5] Fed. Rec. Doc. 1, Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody, *Danon v. Louisiana State et al,* No. 05-0584.

## II.      Jurisdiction

Jurisdiction is proper under the Antiterrorism and Effective Death Penalty Act (AEDPA) if the petitioner is "in custody" under the conviction he is attacking.[6]  Petitioner Barton is confined at the Catahoula Correctional Center, in Harrisburg, therefore jurisdiction is proper.

## III.     Venue

Venue is proper under AEDPA in the district where the inmate is in custody or where the state court conviction and sentence were obtained.[7]  Petitioner Barton was convicted and sentenced in Jefferson Parish, therefore venue in the Eastern District of Louisiana is proper.

## IV.      Timeliness

After thoroughly reviewing the record, the Court finds that Petitioner's application was filed timely. Generally speaking, AEDPA requires that a Petitioner bring his Section 2254 claims within one year of the date on which his conviction became final.  (28 U.S.C. § 2244(d)). Pursuant to 28 U.S.C. § 2244(d)(1)(A), Petitioner's one year limitation period for seeking federal habeas corpus relief commenced running on the date on which that judgment "became final by the conclusion of direct review or the expiration of the time for seeking such review."  Because Petitioner's direct appeal was denied by the Supreme Court of Louisiana on February 20, 2004 and he did not appeal to the United States Court Supreme Court, his conviction became final on May 20, 2004, ninety days after the Supreme Court of Louisiana denied the application for supervisory writ on February 20, 2004.

---

[6] 28 U.S.C. § 2241(c)(3); 28 U.S.C. § 2254(a).
[7] 28 U.S.C. § 2241(d).

On this date, the one-year statute of limitations for filing a federal habeas corpus petition

began to run.  *See Roberts v. Cockrell,* 319 F.3d 690, 694 (5th Cir. 2003); *Ott v. Johnson*, 192

F.3d 510, 513 (5th Cir. 1999).  However, AEDPA's one year statute of limitations is tolled for

the period during which a properly filed application for post state conviction relief or other

collateral review attacking a conviction or sentence is pending in state court.  *See Fields v.*

*Johnson*, 159 F.3d 914 (5th Cir. 1998); 28 U.S.C. § 2244(d)(2).  Petitioner did not file a motion

for post conviction relief in state court, but rather chose to file the instant petition with this

Court.  Between May 20, 2004 and February 18, 2005, when the Petitioner filed the instant

petition, 274 days of the statute of limitations lapsed.  Therefore, the total number of days lapsed

was 274, which is within the statute of limitations.

For the reasons stated above, the Court finds that Mr. Barton's petition for a writ of

habeas corpus filed pursuant to 28 U.S.C. § 2254 is timely.


## V.      Exhaustion

Petitioner has exhausted available state remedies as required by AEDPA.  Under

AEDPA, a petitioner must first exhaust his remedies in state court before seeking habeas relief

from the federal courts.  § 2254(b)(1)(A).  "To exhaust, a petitioner must have fairly presented

the substance of his claim to the state courts."  *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir.

2001) (internal quotation marks omitted).  Generally, the exhaustion requirement is satisfied only

when the grounds urged in a federal habeas petition were previously presented to the state's

highest court in a procedurally proper manner according to state court rules.  *Dupuy v. Butler*,

837 F.2d 699, 702 (5th Cir. 1988).

Petitioner presents a single claim for review in his federal habeas petition as listed above. This claim was raised in his Application for Writs of Certiorari and Review to the Louisiana Supreme Court.[8]  Accordingly, Petitioner has satisfied AEDPA's exhaustion requirement. Therefore, the Court will address the claims on the merits.

## VI.    Standard of Review

AEDPA comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of fact and law.[9]  Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  The United States Supreme Court has noted the following:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but

---

[8] State Rec., Vol. 11 of 11, Application for Writs of Certiorari and Review, October 30, 2003.
[9] 28 U.S.C. § 2254(d):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams v. Taylor*, 529 U.S. 362 (2002) that an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002) (internal citations omitted).

As to questions of fact, factual findings are presumed to be correct, and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also Hill*, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

## VII.    Law & Analysis[10]

Petitioner argues that his Sixth Amendment rights were violated when the State was permitted to introduce evidence of his co-defendants' confessions which inculpated Petitioner.[11] Specifically, Petitioner argues that when his co-defendants refused to answer questions on direct examination, despite a grant of immunity, the State was allowed to delve into these confessions during its direct examination of Detectives McGregor, Cunningham, and O'Neil.[12]

In *Lilly v. Virginia*, the United States Supreme Court was faced with the issue of whether the accused's Sixth Amendment right "to be confronted with the witnesses against him" was violated by admitting into evidence at his trial a non-testifying accomplice's entire confession

---

[10] The Court notes that in his petition Petitioner relies on *Douglas v. Alabama* for support that the admission of a co-defendant's confession against a defendant violates the defendant's Sixth Amendment rights.  380 U.S. 415 (1965). The Court believes *Douglas* is sufficiently dissimilar from the instant case. In *Douglas* the co-defendant's statement was read into the record and constituted the only direct evidence against the defendant.  *Id.* at 419-20. Here the Petitioner's co-defendants confessions were not read into the record and the limited statements admitted were not the only direct evidence of Petitioner's role in the crimes.  As a result, the Court assumes error under *Lilly* and proceeds to determine if it was harmless.

[11] Fed. Rec. Doc. 1, Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by Person in State Custody at 1, *Barton v. Louisiana State et al,*  No. 05-0584.

[12] Fed. Rec. Doc. 1, Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by Person in State Custody at 5-6, *Barton v. Louisiana State et al,*  No. 05-0584.

that contained some statements against the accomplice's penal interest and others that inculpated

the accused."  527 U.S. 116, 120 (1999).  In *Lilly*, the Defendant's brother and co-defendant,

Mark Lilly was called to the stand.  *Id.* at 121.  When he refused to answer the State's questions,

invoking his Fifth Amendment rights, the State was permitted to offer into evidence statements

he made to police after his arrest as declarations of an unavailable witness against penal interest.

*Id.*  The Court found that "accomplices' confessions that inculpate a criminal defendant are not

within a firmly rooted exception to the hearsay rule as that concept has been defined in our

Confrontation Clause jurisprudence."  *Id.* at 134.  The Court held that the introduction of Mark

Lilly's confession against the defendant violated his Sixth Amendment rights to confrontation

and remanded the case to the State court to determine if the error was "harmless."  *Id.* at 139-40.

In *Brecht v. Abrahamson*, the United States Supreme Court discussed the harmless error

standard as it applied to habeas corpus relief.  507 U.S. 619, 622 (1993).  The Court determined

that the *Kotteakos* standard, instead of the standard enunciated in *Chapman v. California*, applied

to a habeas review of constitutional error.  *Id.* at 637.  The Court stated that "under this standard,

habeas petitioners may obtain plenary review of their constitutional claims, but are not entitled to

habeas relief based on trial error unless they can establish that it resulted in actual prejudice."  *Id.*

The Court determined the test to be whether "the error had substantial and injurious effect or

influence in determining the jury's verdict."  *Id.*[13]

In *Cupit v. Whitley*, the Fifth Circuit delineated the factors a reviewing court should

consider when determining whether the erroneous admission of evidence at trial was harmless.

28 F.3d 532, 539 (5th Cir. 1994).  These factors are: "(1) the importance of the witness's

testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence

---

[13] While the circuits are split on the issue, the Fifth Circuit has determined that Brecht's standard for harmless error survived the enactment of AEDPA.  *Robertson v. Cain*, 324 F.3d 297, 306 (5th Cir. 2003).

10

or absence of evidence corroborating or contradicting the testimony; and (4) the overall strength

of the prosecution's case against the defendant." *Id.*  The Court in *Cupit* stated that of these

factors, the strength of the prosecution's case was "the single most important factor in

determining whether the error was harmless." *Id.*

In the instant case, assuming for the sake of argument that the admission of evidence of

the co-defendants' confessions was error, the Court must determine whether this error was

harmless.  This type of violation requires that the Court review the record *de novo* to determine

whether the error has caused actual prejudice to the Petitioner or was harmless.  *Id.* at 538.

Applying the factors in *Cupit*, this Court finds that the admission of the Petitioner's co-

defendants' statements did not have substantial and injurious effect or influence in determining

the jury's verdict, and thus did not prejudice the Petitioner.

In his petition, Petitioner objects to testimony given by detectives regarding statements

made by his co-defendants implicating Petitioner in the crimes.[14]  A review of the record shows

that these statements did not implicate Petitioner but rather discussed the presence, or lack

thereof, of other individuals at the crime scenes.[15]  There is ample other evidence implicating the

Petitioner.  The Petitioner admitted, in his statement to the police, and again when testifying at

trial, that he was present and drove the getaway car during the attempted robbery of Mr. and Mrs.

Kiv, but that he was in the store when his co-defendants broke into their car, on August 12, 1999.

Petitioner was acquitted on the burglary charge and convicted on both attempted robbery counts.

The Petitioner claimed not to be present at the crime on August 9, 1999; he was acquitted of all

charges relating to that armed robbery and aggravated burglary.  The Petitioner also claimed not

---

[14] Fed. Rec. Doc. 1, Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by Person in State Custody at 6, *Barton v. Louisiana State et al,*  No. 05-0584
[15] Fed. Rec. Doc. 1, Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by Person in State Custody, Ex. 4 at 17-20, *Barton v. Louisiana State et al,*  No. 05-0584

11

to be present during the August 14, 1999, while admitting to loaning his car to a co-defendant and receiving $2300 cash for the loan. The Petitioner admitted that he and his co-defendants paid cash for new cars, at the same dealer, on the same day, shortly after the August 14th robbery. During a rigorous cross examination, the Petitioner admitted that he lied to the police, he lied in his statement, he lied at a motions hearing, and then testified that he was directed by the police on what answers to give, to incriminate his co-defendant and minimize his own involvement. The jury returned responsive verdicts of guilty of lesser but included offenses on the August 14th charges. Petitioner fails to demonstrate that the detectives' statements prejudiced him.

Petitioner also objects to testimony given by Detectives McGregor and Cunningham that pertained to the vehicle used in the robberies.[16]  Specifically, the Petitioner objects to Detective McGregor's testimony that Lipton and Jenkins, his co-defendants, confessed to him that Petitioner's Chevy Lumina was used in each of the robberies and Detective Cunningham's testimony that his interviews of each of the defendants suggested that no other vehicle besides the Petitioner's was used in the robberies.[17]  A review of the record shows that there is ample evidence outside of the Detectives' testimony that Petitioner's car was used in at least two of the robberies.  As noted earlier, Petitioner was acquitted of aggravated burglary and armed robbery charges for August 9, 1999, so there is no prejudice resulting from any statements regarding that crime. Regarding the August 12th incident, the victims' testimony indicated that the car used by the defendants was a dark color, two or four door, possibly American made, with a loud muffler.[18]  Detective's McGregor's testimony confirmed that Petitioner's Chevy Lumina did in

---

[16] Fed. Rec. Doc. 1, Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by Person in State Custody at 6, *Barton v. Louisiana State et al,* No. 05-0584.
[17] Fed. Rec. Doc. 1, Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by Person in State Custody at 6, *Barton v. Louisiana State et al,* No. 05-0584.
[18] State Rec. Vol. 6 of 11, Trial Transcript at 372, 382, 435, 460, 481, & 484, March 15, 2001.

fact have a loud muffler.[19]  McGregor testified that Petitioner initially admitted that he had loaned his car to Lipton, knew his car had been used in a robbery, and that the police were looking for it.[20]  Furthermore, McGregor testified that Petitioner admitted he had the car driven to Mississippi because it was a "hot car."[21]  In his police statement and again at trial, Petitioner admitted that he and his car were present at the robbery committed August 12, 1999, and that he loaned his co-defendant the car on another occasion shortly after the August 12th incident, for which he was given $2300.00 in cash.[22]  Petitioner provided ample evidence of the use of his car on the nights of both crimes for which he was convicted.

The Court finds that the Detectives' testimony was neither of such importance to the State's case, nor uncorroborated enough to have had a substantial and injurious effect or influence in determining the jury's verdict. In light of the cumulative testimony and evidence placing Petitioner's car at the scene of the crimes, and Petitioner's own testimony that he was present and drove the getaway car from one of the robberies, any error was harmless.

Lastly, the Petitioner objects to testimony given by Detective O'Neil that implicated that other individuals were present at the robberies.[23]  Specifically, the Petitioner objects to Detective O'Neil's testimony that in his interview with Lipton that Lipton implicated other individuals, besides himself, were involved in the robberies.[24]  However, upon review of the record the Court notes that Petitioner's name was never mentioned but rather the Detective testified as to who Lipton told him *was not* there.

---

[19] State Rec. Vol. 7 of 11, Trial Transcript at 571, March 16, 2001.
[20] State Rec. Vol. 7 of 11, Trial Transcript at 622, March 16, 2001.
[21] State Rec. Vol. 7 of 11, Trial Transcript at 602-03, March 16, 2001.
[22] State Rec. Vol. 7 of 11, Trial Transcript at 723-26, March 16, 2001.  See also Supplement to State Rec., Statement of Danon Barton, August 17, 1999, taken at the Kenner Police Department.
[23] Fed. Rec. Doc. 1, Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by Person in State Custody at 6, *Barton v. Louisiana State et al,* No. 05-0584.
[24] Fed. Rec. Doc. 1, Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by Person in State Custody, Ex. 4 at 123-30, *Barton v. Louisiana State et al,* No. 05-0584.

As stated above, the Fifth Circuit in *Cupit* stated that "the single most important factor in determining whether the error was harmless" is the strength of the prosecution's case against the defendant. *Cupit*, 28 F.3d at 539.  In the instant case, the Court finds that the State's case against the Petitioner was strong.  As discussed earlier, the State produced numerous witnesses and evidence that implicated not only the presence of the Petitioner's vehicle at the crimes (excepting the August 9th incident), but also the Petitioner.  In statements to police, introduced into evidence at trial, the Petitioner admitted his knowledge of and role in the crimes, and admitted to taking money from a co-defendant after loaning him his car. Petitioner's testimony at trial indicated his knowledge of the crimes and his presence, and participation as the getaway car driver, during at least one crime, the attempted armed robbery of Mr. and Mrs. Kiv on August 12th.

As a result, the Court finds that the admission of the statements at trial, even if error, was harmless, as it did not prejudice the Petitioner.

## VIII.   Conclusion

Having considered the complaint, the record, and the applicable law, the Court finds that Petitioner has not established that his state conviction and sentence present grounds for the relief requested.  Accordingly, IT IS ORDERED that the petition of DANON BARTON for writ of habeas corpus under 28 U.S.C. § 2254 is DISMISSED WITH PREJUDICE.  Judgment will be entered accordingly.

New Orleans, Louisiana this 5th day of February, 2007.

HELEN G. BERRIGAN
U.S DISTRICT JUDGE

14